Thank you, Your Honor. May it please the Court, my name is Michael Johnson. I represent the amicus, the Federal Housing Finance Agency, in the case, and I'll be arguing on behalf of the appellants, Bank of America and Fannie Mae. I'd like to reserve two minutes of time for rebuttal, please. District Court erred in holding that Nevada's ancient lien statute terminated Fannie Mae's deed of trust, and this Court should reverse the judgment. It's an interesting case. It's an important case. As the Court knows from the motions practice, it's an intensely contested case, but ultimately it's a simple case. I'll make just three points today. First, the Nevada Supreme Court's recent decision in Glass controls here and requires the Court to reverse. Second, separately from Glass, NRS 106.240, Nevada's ancient lien provision, cannot apply here. It cannot apply in the midst of pending litigation to determine the deed of trust validity, and it cannot apply because it's preempted by a federal limitation statute. Third, even if NRS 106.240 could conceivably apply here, it wouldn't because it was never triggered. That's true as a matter of the plain text of the statute, which is confirmed by the statutory history. Let me start with Glass. Factually, this case is on all fours with Glass. The instruments that the Court should and the 2010 rescission are substantially identical across the two cases. In fact, the critical paragraph in the deed of trust, which is paragraph 22, SFR says that at pages 2, 8, and 12 of its brief, and we agree, is, to my eye, identical. There is the same language in the notice of default, same language in the notice of default, and the same language in the rescission, the language that the Nevada Supreme Court calls out as dispositive in Glass. On these virtually identical facts, the Nevada Supreme Court held, and I quote, NRS 106.240 is inapplicable here because Lender, I'm saying Lender, it uses the name Lender in the opinion, rescinded the notice of default. That happened here, the same result should follow. Now, my friends at SFR offer three responses, none of which has merit. First, they argue that Glass doesn't apply because the notice of default here is purportedly not the instrument that made the debt wholly due. Wholly due being the term in NRS 106.240 that triggers the 10-year clock. They say it must have happened sooner. They look at the notice of default and they parse some text and say, hey, the acceleration must have happened before the notice of due. It can't have happened. Under the terms of the deed of trust and Nevada law, recordation of a valid notice of a default is a necessary prerequisite to acceleration of the loan. Let's look at section 22 of the deed of trust. That's at page 155 of the excerpts of record. It has three paragraphs. The first two are critical. Under the first two paragraphs of section 22 in Nevada law, acceleration is an event that requires three steps. First, there has to be notice to the borrower. That's the first paragraph of section 22. It goes into some detail about what the notice has to say and what it has to do, but at the second to last sentence of paragraph 22 is the key phrase, and it says, if notice of default is not cured on or before the date specified in the notice, lender at its option and without further demand may invoke the power of sale, including the right to accelerate full payment of the note. So, acceleration of full payment of the note is something that happens after notice to the borrower. So notice is step one. Step two is in the second paragraph of section 22. That tells you what has to happen next. What has to happen next is recordation of a valid notice of default. Now that's step two. There are three steps, and this is critical when we look at Glass. The third step is after the notice of default, as a matter of Nevada law, a period of time in which the borrower can reinstate, so it can make a partial payment, not a full payment, and get back to good terms under the note. That time has to run. So what did the Nevada Supreme Court say about all this in Glass? Well, it said NRS 106-240 is inapplicable here because the lender rescinded the notice of default. When the lender recorded the rescission, this effectively retracted the notice of default and restored the parties to their prior status they held before the notice of default was filed, and if the lender wanted to accelerate the entire balance due in the future, it would have to record a new notice of default, and the borrower would have an additional 35 days to cure. So all three steps have to happen. A rescission of step two means the note cannot have been accelerated. Counsel, let me ask you a question. So I followed all of that, and I understand your argument there, but the district court said, well, in your 2010 rescission notice, you reserved certain rights under the deed of trust. Yes, Your Honor, and that's dealt with. What was the district court concerned about, and how do you respond to the concern? So the district court is concerned that the 2010 rescission doesn't say in hype verba, not only do we rescind the necessary prerequisite to acceleration, but we also accelerate. That would be redundant because if you pull the rug out from under the acceleration, the acceleration can't stand, and that's what the Nevada Supreme Court was saying when it said after you, quote, rescind, cancel, and withdraw the notice of default, if you want to accelerate in the future, you have to issue a new notice of default, and the 35 days have to pass. Now, that process all has to play out. When the Nevada Supreme Court keyed on that language, does hereby rescind, cancel, and withdraw the notice of default, it's saying whether or not the notice, the rescission specifically mentions deceleration, and the notice in glass didn't. It's substantially identical. It's the same, it's a recontrast rescission, and they are worded virtually identical. They have that same qualification, those same limitations. The Nevada Supreme Court determined the key language was simply that it rescinds, cancels, and withdraws the notice of default, and that's right, because once the notice of default is undone, it has to be reissued. I have one other question or comment on this particular issue relating to glass, and that is, glass was not published by the Nevada Supreme Court, is that correct? That's correct, Your Honor. But from our perspective, one can reasonably say that if the Nevada, in light of glass, if the Nevada Supreme Court were to get this issue, they would probably decide it's in glass. Is that right? I think it's a virtual certainty for several factors. First, the factual identity of cases, same instruments, same arguments. Second, the recency of the case. It's a 2010 case. This is not an unpublished case from five years ago, six years ago, right when Nevada started allowing citation of unpublished authority. It's very recent. Third, it's a unanimous decision. It's a unanimous panel decision, but more than that, it's a decision that was petitioned for on-bound pre-hearing and rejected. So if there's any suggestion that somehow, hey, only three of the nine judges on the Nevada Supreme Court have weighed in here, that's just not correct. The entire court considered the on-bound petition and rejected it. So there are at least three indicia of reliability here, and of course, this court relies routinely on unpublished authority of state versus white horse estates. The court could find that, but it's at 987 and 30. Did you want to touch your other issue that... I do, Your Honor. I think it's important to say that NRS 106.240 wouldn't apply here even separately and apart from glass. It wouldn't apply in the midst of litigation. We need to start with the text of the statute, not the provision 106.240, but the whole statute. The whole statute includes a provision that's an activist part of the same very simple, short statute, but codified in a different chapter of Nevada law, 108.260. It says a lispendence is good for ten years. So once a lispendence is reported, the world is on notice that the validity of the deed of trust is in dispute for ten years or until the litigation about the deed of trust validity is resolved. That's an exception. It comes last. So the Nevada legislature said, hey, deeds of trust are good for ten years, but notice that if there's a lispendence outstanding, that's good for ten years. Now if that's equity or if the court were to assume away that lispendence provision, tolling would still apply. The Nevada Supreme Court's PROMAX decisions remanded for a consideration of an equitable factor. Now there it was equitable estoppel, but estoppel is a form of tolling. So the thought that because of the way 106.240 is worded, equitable tolling is somehow off the table is just totally inconsistent with the Nevada Supreme Court's decision in PROMAX. Your opposing counsel argues that this is a, well it's not necessarily what they argue here, but is this a statute of repose or a statute of limitations or some other kind of statute? I think it has elements of both, Your Honor. What we know is it's a state law time limitation, and that brings in the second reason why it can't apply generally here. It's preempted by the Reform Act of 2008, which includes its own statute of limitations provision that this court looked at in the NCUA case and that the Nevada Supreme Court looked at. These are very similar, identically worded statutes, that this court looked at in the NCUA case, the Nevada Supreme Court looked at in Rhodes. Both courts held that the substantially identical provision preempts any applicable state law time bar, whether it's a statute of limitations or a statute of repose. Now my friends at SFR say, well this is clearly a statute of repose. If it is, it's got to be preempted under NCUA and under Rhodes. SFR repeatedly describes 106.240 in the exact terms this court used to describe the statute at issue in NCUA. A cutoff, an absolute bar on a defendant's temporal liability that's SFR's brief at 44 and 48. If that's true, it's got to be preempted by a statute that has the exact same words as the statute at issue in NCUA. That means that Banna and Fannie Mae, who are acting on behalf of the conservator, because it's Fannie Mae's deed of trust and Fannie Mae is in conservatorship, they get six years from accrual of the cause of action. And the way statutes of limitations operate, you get the six years to start the litigation and the act. Your Honor, for all those reasons, the court should reverse the judgment. Thank you. All right. I'll give you a minute for rebuttal. Let's hear from your opposing side. Good afternoon, Your Honor. May it please the court. My name is Karen Hanks and I represent SFR Investments Pool 1 LLC. If you would allow me, I'd like to kind of work backwards. I know we want to talk about glass, but if I could just touch a little bit on preemption. I want to first raise the issue that that issue was raised below with respect to 106.240, but the only part of preemption that they identify is express. But all 4617B12 does, I'm sorry, can Mr. Johnson mute his screen, please? I'm getting a lot of feedback. With respect to express preemption, 4617B12 only preempts shorter time periods. So irrespective, I don't know if 240 is a statute of repose or a statute of limitations. It's a statute of repose. That's what the district court found. But 10 years is longer than six, period. So there is no express preemption. And they don't even ever answer that. Now, with respect to glass, I want to highlight the fact that the way the issue was framed for the glass court was very different how it's framed here and how the district court analyzed it. Yes, they were dealing with the same documents and largely the same language. But glass framed the issue as if it required a clear and unequivocal statement about deceleration. Essentially, glass was arguing that there need to be more than just canceling the notice of default. The issue here is different. That's not how we're framing the issue. The issue that we're framing and what the district court properly found is that the bank intended to limit its rescission. And if you look at the excerpts of Record 166, they specifically say, however, that this rescission shall be deemed to be only an election without prejudice not to cause sale. So the district court properly gave intent to the words of Bank of America that they put in that notice. And what we have to understand when the issue wasn't framed that way for the glass court, the natural consequence of glass is that they're essentially saying a party is not able to exercise its contractual remedies, that it's not able to decide which remedies it wants to choose and cancel and which remedies it wants to preserve. That's essentially what they're arguing. That's why glass is not instructive here. And it doesn't surprise me that the glass course missed this overarching problem because that's not how the issue was framed by the glass parties. Also telling by the glass decision is that they don't even reference this language, your honors. They read it. Their decision reads as if the notice of default stops at hereby rescind, cancel, and withdraw the notice of default. They actually put a period in the disposition. It doesn't end there. The sentence, as I've already read, continues and then limits. It's a self-imposed limitation on what they want to cancel. If you look at the notice of default, I mean the notice, the rescission of election declared default that was filed in, what was it, 2010? Yes, your honor. So, I mean, it seems pretty clear. This notice is hereby given that Recon Trust Company, acting as the agent for the beneficiary, does hereby rescind, cancel, and withdraw the notice of default and election to sell. And then the sentence continues, provided however. That's understood, but it's unmistakably clear that they're canceling their notice of default. But only, then they limit it. The notice of default, as counsel was explaining, is the one that accelerates, it's the acceleration of the, of the amount that's due. That's what the district court found, but we argued that they're based on the language of the notice of default, which indicates they had already accelerated it. They've, they already did it. But even so, they qualify that statement and that's what the glass court did not analyze. Look, the deed of trust, as counsel just pointed out, has other provisions to it as well. And the beneficiary, the trustee, has other rights. The beneficiary has other rights under the deed of trust. They're just saying that our other rights aren't affected by this. Exactly. Acceleration. That's the right they're saying is not affected. That's exactly what the district court found. I completely agree with what counsel is saying. The deed of trust does identify multiple remedies. Election to go to sale is one remedy. Acceleration is another remedy. And they exercised both remedies and only canceled the option to go to sale. Your honors, if you're, if you're, if you're even questioning whether the, how the district, or how the Nevada Supreme Court would look at this, there is a case before the Nevada Supreme Court currently pending. It is SFR versus U.S. Bank. It's case number 81293. This issue, as it's postured before you, and as it was postured before the district court, is exactly like it is here. And so the Nevada Supreme Court will get an opportunity now to address when a bank puts limiting language in their document. I am confident that the Supreme Court did not even consider the fact that they were essentially saying, we're not going to allow you to cancel some rights and preserve other rights. You also have the problem, this document is not just communicating to the world. It's communicating to the public. They can't, there cannot be a foreclosure on this deed of trust without, you know, without a notice of default and election to, to proceed, right? Yes, they cannot non-judicially foreclose without issuing a notice of default, but there's nothing that requires or limits. That's the other thing I wanted to point out. I think, I think Mr. Johnson said it, which is wrong. There's nothing under Nevada law that limits the notice of default as the document that they can accelerate the loan. In fact, it defies the deed of trust. Paragraph 22 just talks about giving notice. It does not talk about requiring it be via a notice of default. That would basically say they can only non-judicially foreclose. Nothing under 107 limits it. In fact, 107080 subsection 3 says you may use the notice of default as your notification of intent to accelerate, but there's nothing that limits it or says this is the only document by which you can do it. So essentially, what Mr. Johnson is posturing is that the Supreme Court of Nevada said, yes, this is the only document. We're going to cut out all your remedies in your deed of trust, and you can't preserve acceleration once you've triggered it, and, but at the same time, cancel another remedy. I also want to highlight that paragraph 18 of the deed of trust provides for acceleration without notice. There's no requirement that they even have to give notice if the borrower transfers the property without permission of the bank. So there's multiple reasons why a bank would accelerate and not need to be limited to the notice of default. As a final matter, Your Honor, I do want to, so we would ask, if you are at all wondering what the Supreme Court would do with this specific argument as it's framed in this case, to say it and wait for the SFR versus U.S. Bank case, because these implications that I'm raising here today are raised in that brief, and what's particularly raised is that somehow the bank can make statements to the world and to really the borrower, and there's problems with even federal law of Dodd-Frank and making certain representations and making intentional language and then saying, well, I didn't mean what I said. It has far-reaching consequences that the glass parties did not even reach because that's not how they framed the issue. And while it is true that SFR did try to file an amicus brief to reframe the issue, it was at the end of the process, and not surprisingly, the court declined to grant rehearing and consider a new argument raised by amici. As a final, with my final two minutes, Your Honor, I do want to highlight another waived argument that was brought up by counsel that somehow you cannot have 106.2-40 operate in the midst of litigation. This was a waived argument. It wasn't raised below, and it really cuts against the PROMAX decision. The PROMAX decision made it very clear that 106.2-40 is a clear and unambiguous statute that requires no further interpretation, let alone is it permissible. And yet that's what they are posturing, that you should somehow say because there was pending litigation regarding the deed of trust that you cannot, that 106.2-40 cannot operate. It's simply not true. But it's your position that even within the 10-year period, so let's say at year six, somebody files a lawsuit, and 10 years rolls around, the lawsuit hasn't been resolved, they're out of luck? Yes, absolutely. If you've triggered 106.2-40. What authority do you have? I mean, that makes no sense to me. PROMAX. PROMAX is the authority, Your Honor, because in that case, you even had a board who tried to reinstate the notes knowing that 106.2-40 terminated the deeds of trust, and that wasn't enough to stop it. Mr. Fincher was the lone holdout. He lost. He went up and he lost. And in fact, the district court had the same kind of aversion as you did and said, no, this can't possibly apply. It's only intended to apply to bona fide purchasers. And the Nevada Supreme Court said, no, no, we don't get to read intent behind this. The bottom line is Bank of America triggered this statute in 2008 when it made the lone do. And then for the next 10 years, it had 10 years and it didn't do anything to either decelerate or foreclose. All right. That's not absurd. Okay. Now, I do have one final point with respect to the 19- Can you click? Yes. With respect to the Liz Pendon's argument, Your Honor, that too was not raised below or in their opening brief. The Liz Pendon's portion of the statute, which I believe we provided to you because from 1917, is separate and distinct from 106.240. And then in 1956, the Nevada legislature separated that statute out and none, neither 106.240 or the Liz Pendon's ones reference each other. Okay. Thank you, Gelson. Thank you. All right, Mr. Johnson. Yes, Your Honor. Thank you very much. I'll be brief with my- One minute to make your point. I appreciate it. So PROMAX just didn't do what Ms. Hanks says the court must do. And that told that 106.240 applies like some sort of a doomsday machine. It remanded the case for consideration of an equitable factor. Ms. Hanks also is mistaken about the way the preemption works. She says it's not a shorter time period. Well, yes, it is. We get six years. We don't get the balance of the 10 years that she says was left, which is shorter than six years from the time the claim accrued. She referenced paragraph 18 of the deed of trust. That was not triggered. It's irrelevant here. Paragraph 22 is the one that matters. And that's the one that says, first, you give notice to the borrower. Second, you must report a notice of default. And then under Nevada law, after the notice of default is reported, time has to pass. The rescission of the notice of deed of trust, same language that was at issue in Glass, undid step two of the process. So step three and the subsequent conclusion that acceleration happened were also undone under Glass, Your Honors. I appreciate the court's indulgence. Thank you for your time. Thank you very much, counsel. We appreciate your arguments this afternoon. The matter is submitted at this time. And that ends our session for today. Although I should say that all of the cases on the calendar were submitted.
judges: Paez, Gleason, Vandyke